Filed 9/17/14  P. v. Miller CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>DUSTIN ANDERSON MILLER,<br><br>       Defendant and Appellant. | A140916<br><br>(Lake County<br>Super. Ct. No. CR920537) |

Defendant Dustin Anderson Miller appeals from the judgment revoking probation and ordering execution of a three-year sentence.  (Pen. Code,[1] § 1203, subd. (e)(4).)  He contends the trial court abused its discretion in revoking probation and refusing to reinstate it in light of his substantial compliance with the terms of his probation.  We affirm.

### I. BACKGROUND

At the time of his October 2009 arrest, defendant was in a parked car that had a strong smell of marijuana inside it.  Defendant denied having any marijuana in the car.  A search of the car, however, revealed "10 pills, one hypodermic needle, and four pounds of marijuana in the trunk."  Defendant told the responding Lake County Sheriff's deputies that he "was going to get paid $1,500 for transporting and delivering the marijuana to Lake County."

---

[1]     All further undesignated statutory references are to the Penal Code.

1

In June 2011, defendant pleaded no contest to transporting marijuana. (Health & Saf. Code, § 11360, subd. (a)). Despite the fact that defendant had suffered two prior felony convictions, the court found that unusual circumstances suggested the interests of justice would be best served by granting probation. (§ 1203, subd. (e)(4).)

At the August 29, 2011 sentencing hearing, the court granted probation based on the probation department's report, which specified 20 different conditions. When the court asked the defendant if he understood and accepted those conditions, defendant said, "Yes, sir." Among the specified conditions was the requirement that defendant "shall . . . report in writing to the probation officer between the 1st and 10th of each month, on forms provided by the probation officer, disclosing his place of residence and employment and other information requested on the form . . . ." (Condition 1). As recommended by the probation department, defendant was ordered to serve 90 days in the county jail. The minutes from the August 29, 2011 hearing, included a written description of each of the 20 conditions of probation.

Following his grant of probation, defendant failed to contact the probation department or otherwise submit the requisite reports. Thus, on June 25 2013, the Lake County Probation Department filed for revocation of defendant's probation. The report alleged that defendant had failed to report to the probation department, his whereabouts were unknown, and that he had "absconded from his grant of supervision." The report further alleged that defendant had violated Condition 1 of his probation "when he failed to submit monthly report forms for the months of September 2011 to June 2013."

On July 22, 2013, the court summarily revoked defendant's probation and issued a warrant for his arrest. Thereafter, defendant denied the probation violation and the matter was set for a contested violation of probation hearing.

At the November 19, 2013 contested hearing, Lake County Probation Officer Jose Martinez testified that he had a telephone conversation with defendant on August 9, 2013, in which defendant wanted to know why there was a warrant for his arrest. After Martinez advised defendant that the warrant was based on his violation of probation, defendant explained he did not know he was supposed to be contacting the probation

2

department. At another point in the conversation, defendant told Martinez that "his car had burned and all his stuff, all his probation paperwork was in the car when it burned and that was the reason why he didn't report." According to Martinez, defendant said that his "monthly report forms" were destroyed in the car fire.

Defendant testified that he never received a copy of the probation order. He did receive a copy of the court's minutes from the August 29, 2011 sentencing hearing, which indicated that he needed to report to the county jail October 5, 2011, and he did so comply. He testified that he attempted to make contact with the probation department between August 29, 2011 and October 5, 2011. He explained that the "clerk behind the counter" looked up his name and told him that he would have to turn himself in or return to probation after his jail sentence.

Following his release from the county jail on November 15, 2011, defendant "went straight to the probation office." He testified: "I talked to the clerk again behind the counter. She stated that there was nothing in the . . . computer about my name in there. I stated, 'Okay, I'll call my attorney and try to get the paperwork.' I then tried to contact [my attorney] four times. Left messages. Never received any calls back. I called probation a couple of times. Basically, I was just waved on . . . ." Defendant testified that he "was baffled" when he was arrested in June 2013 for violating his probation.

Defendant denied telling Martinez that his monthly reporting forms had been burned in the car fire. Rather, the "paperwork" that he had been referring to were his "[court] minutes." Defendant contended that he "never received anything" from the probation department and that he did not know he was required to report to the probation department.

Defendant admitted that while he was on felony probation in Oregon in 1994, he was required to report regularly to a probation officer. He further admitted that while on parole in California in 2001, he had to report to his parole officer every week.

The trial court determined that defendant had willfully violated Condition 1 of his probation by failing to report to the probation department. In so ruling, the court explained as follows: "There was . . . evidence which the Court found credible that . . .

3

when the car burned up there [were] monthly report forms that were burned up. [¶] And, you know, he's been on felony probation before and had reporting requirements . . . [I]t's really clear that burden's on him to report."

At the January 21, 2014 sentencing hearing, the court reiterated that defendant was in violation of probation by failing to report to the department. On the issue of reinstating probation, the court explained as follows: "In terms of regranting probation, or reinstating probation, there is a restriction. He has two or more prior felony convictions. Probation can only be granted if I find this to be an unusual case . . . I made that finding originally, and I gave him that chance . . . [H]e has now been found in violation of probation. So it's not a matter of not trying to rehabilitate. We tried that. It's not a matter of not giving him a chance. I gave him a chance despite his record." With respect to defendant's performance on probation, the court found that his progress "has been poor[,]" explaining: "He has violated his probation by absconding. Failed to make payments towards his financial obligations. And as pointed out, the author of the original [probation] report felt it was . . . not an unusual case back at the time I granted probation. [Defendant] assured me he would not violate probation. And he has. Therefore, probation is permanently revoked."

## II. DISCUSSION

Defendant contends that the trial court committed "reversible error" in revoking his probation "for failing to meet his financial obligations," and "in light of [his] efforts to comply with the terms, in light of his progress towards rehabilitation and integration into his community, and in light of the technical nature of the alleged violation, failing to submit forms." (Original capitalization and boldface omitted.)

Section 1203.2, subdivision (a) provides that "the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated *any* of the conditions of his or her supervision . . . regardless whether he or she has been prosecuted for such offenses." (Italics added.)

4

"[A] decision to revoke probation when the defendant fails to comply with its terms rests within the broad discretion of the trial court." (*People v. Covington* (2000) 82 Cal.App.4th 1263, 1267.) "Although that discretion is very broad, the court may not act arbitrarily or capriciously; its determination must be based upon the facts before it." (*People v. Buford* (1974) 42 Cal.App.3d 975, 985.) The facts supporting probation revocation need only be proved by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441-442.)

On appeal, we will not interfere with the trial court's exercise of discretion "'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) This is not to say that a reviewing court will never interfere with a trial court's decision not to reinstate probation. Where the record reveals that the defendant's violation was not the result of irresponsible, willful, unlawful or disrespectful behavior, imposition of a prison sentence may be an arbitrary and capricious use of the court's power. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379.)

In this case, the probation department originally noted that defendant's prior felony convictions precluded granting probation except upon a finding of unusual circumstances. Despite his prior felony convictions, the court granted defendant probation. Defendant had both the reason and the experience, having previously been on probation, to understand that if he did not comply with the terms of probation he would be sent to prison. Yet he failed to comply with one of the most basic terms of his probation, which was to report to the probation department. Defendant failed to report for nearly two years. Contrary to defendant's contention, this fundamental noncompliance was a not merely a "technical" violation. (*Cf. People v. Zaring, supra,* 8 Cal.App.4th at pp. 378-379 [being 22 minutes late to revocation hearing not a willful violation].)

According to defendant, the trial court erred in revoking his probation for failing to meet his financial obligations without first considering whether the failure was willful and whether he had the ability to pay. Contrary to these contentions, the trial court did

not revoke his probation for failing to comply with the financial obligations imposed therein. Rather, the court revoked his probation for willfully failing to report to probation. The court considered defendant's failure to make payments towards his financial obligations within the limited context of deciding whether to reinstate probation. Defendant's willful failure to report, standing alone, was sufficient to permanently revoke his probation. (§ 1202.3, subd. (a).) We cannot fault the trial court for considering all of the facts bearing on the offense, including his noncompliance with other terms of his probation in determining whether to reinstate probation. (*People v. Downey, supra,* 82 Cal.App.4th at pp. 909-910.)

Defendant's failure to report was a willful failure to comply with the conditions of his probation and the trial court did not abuse its discretion in revoking probation.

### III. DISPOSITION

The judgment is affirmed.


_____
REARDON, J.


We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.

6